W. H. MOORE v. N. Y. GULLEY.

(Filed 5 March, 1907).

1. **Pleadings—Complaint—Demurrer—Fraud—Judgment in Separate Action.**—In a suit brought to set aside a verdict and judgment in a former and different action for fraud and circumvention, an allegation of the complaint of fraud and suppression of material evidence is alone insufficient, and the demurrer properly sustained.

2. **Complaint—Demurrer—Perjury—Record Evidence.**—A demurrer to a complaint alleging false parole testimony concerning a material fact upon the trial of a former and different action between the same parties is properly sustained. Equity requires the party seeking it to be free from laches, and the production of a higher grade of evidence than mere parol, such as conviction of perjury, so there may be an end to the litigation.

APPEAL in civil action from judgment sustaining a demurrer, before *Biggs, J.,* at January Term, 1907, of Superior Court of FRANKLIN County.

This action was brought to set aside a verdict and judgment and for a new trial in a former action between the same parties for the recovery of a tract of land, in which the present defendant was plaintiff and the present plaintiff was defendant. It is alleged, substantially, that the defendant swore falsely as to the boundaries of the land in dispute, in that he testified that he had surveyed the same and run a line, and that according to the survey and location of the line his deed covered the land, and further that James I. Moore, under whom the plaintiff (Moore) claimed, was present when the survey was made and assented to the location of the line. It is then alleged that "this testimony constituted an estoppel upon the plaintiff" and was false, as the testimony of the chain-bearers, and another witness who was present when the survey was made, will show, they having expressed a willingness to testify that James I. Moore was not present at the time mentioned, and that in fact he was not in the county;

144—6

that the plaintiff has received a letter from the defendant, in which the latter "impliedly admits that he may have been mistaken in his testimony when he swore that James I. Moore was present and consented to the running of said line and survey, which constituted an estoppel"; that the matters, to which the defendant thus testified, were not set out in his complaint in that suit. It is further alleged that the defendant fraudulently obtained from James I. Moore possession of the Rhem deed, which contains a true description of the land, and which the defendant suppressed; that by reason of the conduct alleged, the defendant (Gulley) was enabled to secure a judgment in the former suit, and that the plaintiff did not have the opportunity to meet his testimony at the trial. He is advised that the alleged facts constitute fraud in law and invalidate the verdict and judgment. The Court below sustained a demurrer to the complaint, and the plaintiff appealed.

*B. B. Massenburg* for plaintiff.
*William H. Ruffin* and *W. M. Person* for defendant.

WALKER, J., after stating the case: The general doctrine, as heretofore approved by this Court when we had separate jurisdictions of law and equity, was that if a verdict be obtained in an action at law by fraud, circumvention or perjury, a court of equity might decide that the party should consent to set aside such verdict and have the matter tried *de novo* in the court of common law; in other words, a court of equity could require a party to give his adversary a new trial, but this power was exercised with extreme caution and the application of the doctrine greatly restricted, and it was confined to cases which presented peculiar circumstances, and due regard was paid to the maxim "It is for the public good

that there be an end to litigation." *Burgess v. Lovengood,* 55 N. C., 457. The law has continued to be as thus declared.

In this case it does not seem to us that there is any sufficient allegation of fraud or circumvention. The plaintiff states in his complaint that a deed containing the true boundaries of the land was suppressed by the defendant, but it does not appear that this was done with the design to prevent the plaintiff from establishing the lines or that it actually did prevent him from doing so, or that the plaintiff made any effort to have the deed produced at the trial of the case, or that other means were not available for proving the boundaries. 14 Enc. Pl. and Pr., 748, 749.

The plaintiff seems to have gone into the trial without relying upon the production of the missing deed, and he has not alleged facts which entitle him in law to complain of any conduct of the defendant in respect thereto. It may be added that the plaintiff does not state that the facts in regard to the alleged suppression of the deed had not come to his knowledge before the end of the trial or before the expiration of the term at which the judgment was rendered. It does not, therefore, sufficiently appear that he did not have the time and the opportunity, during the trial, to produce the witnesses named in his complaint for the purpose of contradicting the testimony of the defendant, if it was untrue; nor is it made to appear that if he did not ascertain what would be the testimony of those witnesses before the trial was completed, he did not discover it in time to move for a new trial before the adjournment of the Court, and thereby obtain the relief which he now seeks. There must have been no laches on the part of the plaintiff, if he would show himself entitled to the favorable consideration of the court of equity. *Powell v. Watson,* 41 N. C., 94; *Dyche v. Patton,* 43 N. C., 295; 14 Enc. Pl. and Pr., 748. It is true he alleged generally that he did not have the opportunity to meet the case made by the testimony

of the plaintiff in the former suit, but it in no way appears why he did not, or that he made reasonable and proper effort to do so, or that his inability to do so, if he made the effort and failed, was due to any fraud or circumvention of the defendant in this case. It frequently happens that a party loses by reason of the unexpected character of his adversary's testimony, but while this may furnish ground for an application to the Court in the same cause for a new trial, if he has been surprised without any fault on his part, it is not sufficient to sustain an independent action for relief against the verdict and judgment, unless there has been some fraudulent conduct or perjury.

The principal contention of the plaintiff is that the defendant testified falsely as to the survey of the line and the location of the boundary when James I. Moore was present and assenting. This is clearly not sufficient as an allegation of perjury. Even if the testimony was false in fact, it is not charged that it was knowingly or corruptly false. It may have been untrue, and yet the defendant have been honestly mistaken in giving it. The reference to the letter received by the plaintiff from the defendant does not aid this defective allegation. It rather tends to show that if the evidence was false in fact, it was mistakenly and not designedly so.

But the plaintiff does not allege that there has been any conviction for the imputed perjury, and this objection is fatal to the complaint. In this respect, the rule as laid down by the *Lord Keeper* in *Tovy v. Young,* Prec. in Ch., 193, has been generally adopted. "New matter may in some cases be ground for relief, but it must not be what was tried before; nor when it consists in swearing only, will I ever grant a new trial unless it appears by deed or writing, or that a witness, on whose testimony the verdict was given, has been convicted of perjury or the jury attainted." Numerous cases

have been decided in this Court involving the question now
presented to us, and we believe that in all of them the prin-
ciple stated in *Tovy v. Young* has been followed, and a con-
viction of the alleged perjury required as a condition of
granting equitable relief. *Burgess v. Lovengood* and *Dyche
v. Patton, supra; Stockton v. Briggs,* 58 N. C., 309; *Horne
v. Horne,* 75 N. C., 101.

If facts, such as those stated in the complaint, were held
by us to have laid a sufficient foundation for a suit to annul
what has been solemnly adjudicated in a former action and
to entitle the plaintiff to a retrial of the case, the result would
be that, as has been well said, "all causes would end in chan-
cery," and the trial of actions at law might, to say the least,
be seriously embarrassed. We should, even in the rightful
exercise of the undoubted jurisdiction invoked, proceed with
the greatest caution. The reason of the rule requiring a
previous conviction of the witness, upon an indictment for
the perjury charged against him, has been said to be, besides
the inconvenience of repeated trials, the difficulty of know-
ing whether upon another trial the same or new witnesses
would swear to the whole truth and nothing but the truth;
hence, to induce the Court to interfere, the falsehood of the
former testimony must be shown, not merely by other wit-
nesses, but by evidence of a higher grade, by writing, or
by the unimpeachable record of a conviction for the perjury.
*Peagram v. King,* 9 N. C., at p. 608; *Dyche v. Patton,
supra.* If we should listen to the complaints of those who
come before us with evidence of less conclusive force, the
administration of the law might easily be turned into a
mockery. We can do no better than to quote the apt and
impressive words of the counsel for the plaintiff (afterwards
Chief Justice of this Court) in *Peagram v. King, supra,*
when discussing a question similar to the one we now have

in hand: "It is not sufficient that the verdict be unjust or even that the evidence upon which it was founded was false; perfect justice cannot be expected to be administered in a human tribunal, and we must expect always to have wrong decisions, either from the mistakes in judgment of the Judge, the defect of proof offered by the one party or the falsehood of that produced by the other. With this danger before us, which must always exist while adjudications are made upon the statements of witnesses who are liable to be corrupted, a necessity seems to have been felt of adopting the maxim, 'there must be an end to litigation.' Public convenience, as well as the interest of the parties, requires it. It results from the palpable truth of the position that a second or a third or any number of trials will not and cannot, in the nature of things, insure a final decision absolutely just." In that case, no previous conviction was required to be shown, because the witness was dead and had made a dying declaration, in which he confessed the perjury. But for these facts the decision would surely have been the other way, as this Court said in *Dyche v. Patton, supra.*

A copy of the record in the former suit of *Gulley v. Moore* was sent up as a part of the case on appeal. It is not mentioned in the complaint as an exhibit, nor by any proper pleading and reference is it incorporated with the complaint. If we consider the case according to ordinary rules, this record is not within the range of the demurrer, it being something separate and apart from the complaint. We deem it but just to the defendant to state that, from what appears in that record, this action seems to be a mere renewal of litigation which has heretofore been practically settled adversely to the plaintiff; and the specific allegations he now makes against the defendant of false swearing and unfair conduct appear to have been tried by a jury and decided

against him, when he had a full and fair opportunity to establish them, if they were true. No inference unfavorable to the defendant can fairly be made in this case, as we are confined to the facts stated by his adversary in his complaint; but, on the contrary, if we examine the record of the former suit, we find that every inference should be made in his favor, as he has so far succeeded in all his controversies with the plaintiff, including this one. A demurrer was no doubt filed in this case, instead of an answer, to put an end to the litigation, and it was properly filed, as the complaint fails to state any cause of action.

His Honor took the correct view of the case, and his ruling on the demurrer is sustained.

Affirmed.