J. R. HORNE v. NITA EDWARDS AND JULIA E. HELMS,

and

J. R. HORNE v. NITA EDWARDS AND JULIA E. HELMS.

(Filed 24 May, 1939.)

1. **Judgments §§ 22b, 22f—Independent action will not lie to set aside judgment for intrinsic fraud.**

Where judgment is obtained through extrinsic fraud, which deprives a party of an opportunity to present his case, such judgment may be attacked and set aside by independent action; but where a judgment is obtained by intrinsic fraud, which arises within the proceeding itself and concerns some matter involved in the determination of the cause upon its merits, the proper remedy is by motion in the cause made in apt time, since a party must be prepared to meet perjury upon the trial, and since public policy demands that there should be an end of litigation under the maxim *interest reipublicæ ut sit finis litium*. The exception to the general rule excluding intrinsic fraud as ground for equitable relief when perjury has been established by conviction or by deed, writing or unimpeachable record, discussed by *Mr. Justice Seawell*, and the exception disposed of under the principal of *cessat ratio cessat lex*, since conviction of perjury now goes only to the credibility of the witness but does not disqualify him.

2. **Same——Action held one to set aside judgment for intrinsic fraud, and demurrer was properly sustained.**

This action was instituted to set aside a prior judgment in ejectment upon allegation that it was obtained by fraud in that the plaintiff therein pointed out a fictitious corner of the tract of land in dispute and that the court surveyor, with knowledge of its falsity and the fraud intended to be perpetrated, adopted such corner and built up a fictitious plat and that the verdict of the jury was based upon such false and manufactured evidence. *Held:* Perjury or the use of false or manufactured evidence is intrinsic fraud, and defendant's demurrer to the complaint was properly sustained, since an independent action will not lie to set aside a judgment for intrinsic fraud.

No. 611—APPEAL of plaintiff from *Phillips, J.,* at Chambers, January Term, 1939, of ANSON.

No. 612—APPEAL of plaintiff from *Phillips, J.,* at March Term, 1939, of ANSON.

The plaintiff instituted this action to set aside the judgment in favor of the defendants (plaintiffs in that action), rendered at April Term, 1938, of Anson County Superior Court, on the ground that the judgment was irregular and fraudulently procured, and obtained a restraining order to prevent execution on the judgment. Upon the hearing, at chambers, the injunction was dissolved, and plaintiff appealed. No. 611. Transcript was filed in this Court, and before this appeal could be heard in regular order, the matter came on for a hearing on the merits, at April Term, 1939, of Anson Superior Court. Then, defendants demurred to the complaint as not constituting a cause of action, and the demurrer was sustained and plaintiff appealed. No. 612.

The original cause was one in ejectment affecting a small area of land, the title to which depended upon the proper location of the dividing line between the parties. The defendants in this case prevailed in the suit and also recovered a money judgment of $125.00 as damages.

Subsequently, execution was issued upon this judgment for the collection of the $125.00 and for the possession of the land described in the judgment, which necessitated a survey of the lands. At that time the plaintiff herein alleges that he discovered that a fraud had been perpetrated on the court by the present defendant, Nita Edwards, and the court surveyor, with regard to the survey and evidence introduced in the original trial.

J. M. Furr, Jr., and another, had been appointed court surveyors, and had furnished to the court the map which was used in the case. The plaintiff complains that Mrs. Edwards falsely and fraudulently pointed out to the court surveyor a certain beginning point which plaintiff says was determinative of the location and hence of the action in court, which point of beginning was, to the knowledge of the said defendant, wholly

erroneous; and that the court surveyor, Furr, in collusion with the said Mrs. Edwards, built up a survey and plat based upon the fraudulent representations of Mrs. Nita Edwards, and "manufactured point 1" as the beginning point on the plat made by him, "knowingly, corruptly, falsely and fraudulently," and that by reason of the false and fraudulent representations of Mrs. Edwards and the said J. M. Furr, Jr., a judgment was obtained which deprived the plaintiff of about 14 acres of land described in the complaint.

It is further alleged that the said J. M. Furr, Jr., court surveyor, "willfully, knowingly, corruptly, falsely and fraudulently represented on the aforesaid plat a line from point 6 to point 7 and to point 8, which line has never been in existence or either in the minds of the parties of this action or in their contentions; but that he knowingly, falsely, corruptly and fraudulently 'built in' or manufactured this line for the purpose of substantiating lines from point 6 to 5 to 4, to 3, to 2, to 1."

The complaint alleges that the false evidence thus manufactured was used upon the trial and constituted the basis for the verdict of the jury and the judgment of the court, without which it is contended the judgment could not have been procured.

After the dissolution of the temporary injunction, the $125.00 awarded by the original judgment was collected. The defendants here moved in this Court to dismiss the action because, as they contend, after the payment of the amount named in the execution, the subject of the controversy no longer exists and the contentions have become academic.

*E. A. Hightower and Thomas W. Ruffin for plaintiff, appellant.*
*B. M. Covington for defendants, appellees.*

SEAWELL, J. The complaint seems to have omitted no word necessary to the legal denunciation of the fraud which plaintiff conceives was committed against him in the procurement of the judgment which he seeks to have vacated. But, as was necessary to good pleading, he set up the facts constituting the alleged fraud; *McNeill v. Thomas,* 203 N. C., 219, 165 S. E., 712; *Colt v. Kimball,* 190 N. C., 169, 129 S. E., 406; and this brings it within a classification that is not particularly helpful to him in this proceeding. It has been held by much the greater weight of authority in American courts that equity will not interfere in an independent action to relieve against a judgment on the ground of fraud unless the fraud complained of is extrinsic and collateral to the proceeding, and not intrinsic merely—that is, arising within the proceeding itself and concerning some matter necessarily under the consideration of the court upon the merits. *McCoy v. Justice,* 199 N. C., 602, 155 S. E., 452; *Kinsland v. Adams,* 172 N. C., 765, 90 S. E., 899;

*United States v. Throckmorton,* 98 U. S., 61, 26 L. Ed., 93; Black on Judgments, 4th Ed., sec. 372; Freeman on Judgments, pp. 2582, 2585. In *Duchess of Kingston's case,* 3 Smith's Lead. Cas., 9th Ed. (Eng.), 1998, 20 How. St. Tr., 554, it is said: "Fraud is an extrinsic collateral act which vitiates the most solemn proceedings of courts of justice."

A recognized leading case on this subject is *United States v. Throckmorton, supra,* from which copious extracts are made in *McCoy v. Justice, supra.* In both the *McCoy case, supra,* and the supporting *Throckmorton case, supra,* extensive illustrations are given, appropriate to an understanding of the distinction and the necessity of applying the rule, and a reading of these cases will greatly aid our discussion of this case.

The paramount consideration involved is expressed in the maxim *"interest reipublicæ ut sit finis litium";* that there should be an end of litigation for the repose of society. This demand of public policy yields to the ends of justice where extrinsic fraud has been practiced only because it is the main characteristic of such fraud that it deprives the party of the opportunity of presenting his case, or his defense, upon the hearing, and renders the result as to him no trial at all in the legal sense. *United States v. Throckmorton, supra; McCoy v. Justice, supra.* Intrinsic fraud, as for example, perjury, or the use of false or manufactured evidence, has no such effect.

It is apparent that protracted litigation between the same parties over the same matter and probably with the same witnesses would likely follow a relaxation of the rule. Embarrassing situations would arise in the administration of the law, since either any taint of fraud at all must be considered sufficient to set aside a judgment, or the impossible task must be imposed on the Court to decide whether the fraud is of little or of grave importance, and what influence it may have had on the final result.

In the case at bar the complaint sets up as ground for setting aside the judgment that the defendant, Nita Edwards, fraudulently pointed out a fictitious corner in the Horne tract of land as a true corner, and that the court surveyor, Furr, with knowledge of its falsity and of the fraud intended to be perpetrated by Mrs. Edwards, adopted such corner and manufactured and built up a fictitious plat, which was subsequently presented to the court, resulting in a judgment adverse to plaintiff. The complaint may be considered as alleging a conspiracy between Mrs. Edwards and the court surveyor, under which the false evidence was manufactured and given on the trial.

In the opinions of the courts, with few exceptions, such fraud has been classed as intrinsic and not sufficient ground for vacating a judgment in an independent action for that purpose.

"Although some few cases sustain the doctrine that equity may grant relief against a judgment obtained by means of false testimony, provided it was procured, concocted, and intentionally produced by the successful party, the weight of authority is to the effect that there is no ground for equitable interference with a judgment in the fact that perjury was committed by such party or his witnesses at the trial, or that he suborned the witnesses and conspired with them to secure a judgment in his favor." 34 C. J., pp. 475, 476, sec. 744; Black on Judgments, 4th Ed., secs. 323, 372; Freeman on Judgments, pp. 2582, 2585.

In this State the rule has been qualified respecting judgments obtained through perjured or false evidence. In a long line of cases, running back to *Peagram v. King,* 9 N. C., 295 and 605, intrinsic fraud, consisting of perjured testimony or false evidence, is recognized as ground for equitable relief against the judgment in law upon condition that the perjured witnesses have previously been convicted of perjury or the falsity of the evidence established by deed or writing or unimpeachable record. *Kinsland v. Adams,* 172 N. C., 765, 90 S. E., 899; *Moore v. Gulley,* 144 N. C., 81, 56 S. E., 681; *Dyche v. Patton,* 56 N. C., 332; *Burgess v. Lovengood,* 55 N. C., 457; *Peagram v. King, supra.* See, also, *McCoy v. Justice,* 199 N. C., 602; *McCoy v. Justice,* 196 N. C., 553. Compare: *Scales v. Trust Co.,* 195 N. C., 772, 143 S. E., 868; *Stockton v. Briggs,* 58 N. C., 314. An examination of these cases, however, will sustain the view that they proceed by way of a relaxation of the rule excluding intrinsic fraud as grounds for such relief in the particular instance of conviction, rather than by way of imposing a restriction upon its general use in that connection, which the cases themselves condemn.

The principle adopted in these cases is that declared in *Tovy v. Young,* Prec. in Ch. 193, 24 Eng., Reports, 93, in which the Lord Keeper dismissed a bill to set aside a judgment, saying: "New matter may in some cases be ground for relief; but it must not be what was tried before; nor when it consists in swearing only, will I ever grant a new trial, unless it appears by deed or writing, or that a witness, on whose testimony the verdict was given, were convicted of perjury, or the jury attainted."

In *Moore v. Gulley, supra,* the *Tovy case, supra,* is explained as follows: "The reason of the rule requiring a previous conviction of the witness, upon an indictment for the perjury charged against him, has been said to be, besides the inconvenience of repeated trials, the difficulty of knowing whether upon another trial the same or new witnesses would swear to the whole truth and nothing but the truth; hence, to induce the Court to interfere, the falsehood of the former testimony must be shown, not merely by other witnesses, but by evidence of a higher

grade, by writing, or by the unimpeachable record of a conviction for perjury." We conceive the true philosophy underlying the *Tovy case, supra,* to be somewhat different and, too, in a respect which makes it no longer applicable to procedure in our courts. Intrinsic fraud has been rejected as a ground for equitable relief in an independent action on account of the public necessity of ending litigation. But under the English law at the time the *Tovy case, supra,* became authority, the conviction of the perjured witnesses disqualified them from giving testimony in the case again and, therefore, the principle *interest reipublicæ ut sit finis litium* was not greatly damaged. Since conviction of perjury now goes only to the credibility of the witness, but does not disqualify him, it seems logical to apply the principle *cessat ratio cessat lex,* and dispose of the exception.

We understand this Court, in *McCoy v. Justice, supra,* to have adopted the authority of the cases cited in support of the decision, especially that of the *Throckmorton case, supra,* notwithstanding the deference paid the earlier cases dealing with conviction of perjury under the principle of the much venerated *Tovy case, supra.* The case before the Court complied with neither rule. So, in the present case, there has been no conviction; but, regardless of that fact, we apply the rule more consistent with the imperative demands of public policy and more in harmony with the principle so repeatedly approved in our own decisions. From this point of view, all the facts alleged in the case at bar are drawn within the classification of intrinsic fraud and are not available as grounds of equitable relief against the judgment in an independent action.

If it should be considered a hardship to require a litigant party to meet perjury as it presents itself, it must be said that the principle is well established in the cases above cited. *McCoy v. Justice, supra.* In *Pico v. Cohn,* 91 Cal., 129, 25 P., 970, cited with approval in *McCoy v. Justice, supra,* the Court said: "It must be a fraud extrinsic or collateral to the questions examined and determined in the action, and we think it is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony. The reason of this rule is that there must be an end of litigation, . . . when he has a trial he must be prepared to meet and expose perjury then and there." This necessity is also a part of the philosophy on which our judicial system is founded.

"What is truth?" Two thousand years ago this question probed the heart of a dramatic and tragic occasion. Now, as then, religious mystery, philosophy, science, law, have no present answer. Truth is the objective; but judicial procedure frankly admits the impossibility of arriving at absolute truth in every controversy. It does intend to achieve certainty—the repose of conventional truth. The result is *veredictum*

only because the jury has so labeled it and society has decreed that the label shall stick. Obviously, when contradictory evidence is addressed to the establishment or defeat of any proposition, the evidence on one side or the other is inconsistent with reality, and whether intentionally or mistakenly so, the adversary party must be prepared to meet it.

Generally speaking, where the fraud is extrinsic or collateral, operating from without, the remedy also may be from without, and the judgment may be set aside by an independent action. But when the fraud is intrinsic, operating from within upon some matter within the line of consideration of the Court upon the merits, the remedy also must be from within, by motion in the cause made in apt time.

We have felt impelled to consider these matters at some length, on account of the important relation they may have to the practice in this somewhat difficult field.

For the reasons herein stated, the judgment sustaining the demurrer is Affirmed.